UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


IN RE: GERALD ROSCOE MOLLOHAN,

      Debtor.


                        Bankruptcy No. 2:23-bk-20130

GERALD ROSCOE MOLLOHAN

      Appellant,

v.                          Civil Action No. 2:23-cv-00358

BROTHERS OF THE WHEEL MC
EXECUTIVE COUNCIL, INC.,

      Appellee.


MEMORANDUM OPINION AND ORDER


      Pending is Appellant/Debtor Gerald Mollohan's appeal of the April 4, 2023, order of the United States Bankruptcy Court, submitted April 27, 2023. Mollohan submitted an opening brief (ECF No. 12), filed July 21, 2023. Appellee Brothers of the Wheel MC Executive Council, Inc. ("Brothers of the Wheel") filed its response (ECF No. 38) on August 22, 2023. Mollohan filed an amended reply brief (ECF No. 94) on October 6, 2023.

## I. BACKGROUND

The parties have been embroiled in prolific and antagonistic litigation since 2011, before both the district and bankruptcy courts, as well as before the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB"). Mollohan has represented himself almost entirely pro se throughout these proceedings.

On February 15, 2011, Brothers of the Wheel instigated the "2011 Trademark Litigation" by filing a complaint with the court alleging that Mollohan had infringed upon Brothers of the Wheel's logo and trademark in violation of the Lanham Act. See Compl., 2:11-cv-00104. The basis for that action was, in brief, that Mollohan, who had once been a member of Brothers of the Wheel's organization, formed his own motorcycle club with a name – Brothers of the Wheel Nomads – and logo strikingly similar to that of Brothers of the Wheel.[1] Brothers of the Wheel sent a cease-and-desist letter, then sued Mollohan when he continued to use the name and logo. Brothers of the Wheel alleged six counts related to Mollohan's appropriation of their name and logo, most notably a trademark infringement claim under section 32(1)(a) of

---

[1] Images of the logos are included in the Proposed Findings and Recommendations of Judge Stanley, submitted in review of the 2011 Trademark Litigation case. See PF&R at 4–5.

the Lanham Act, 15 U.S.C. section 1114(1)(a) and a false
designation of origin claim under section 43(a) of the Lanham
Act, 15 U.S.C. section 1125(a).  See Compl. 6–9, 2:11-cv-00104.

The matter was referred to Magistrate Judge Mary E.
Stanley for submission of Proposed Findings and Recommendations
("PF&R") to the district court judge.  Judge Stanley submitted
the PF&R on November 2, 2011, recommending that the court grant
summary judgment in favor of Brothers of the Wheel on the
trademark infringement and false designation of origin claims
and that the court reject Brothers of the Wheel's four other
counts for failure to state a claim upon which relief could be
granted.[2]

In recommending the court grant summary judgment for
appellee on the matter of trademark infringement, Judge Stanley
wrote the following regarding Mollohan's intent:

> [T]he . . . factor [of] defendant's intent .
> . . also weighs in the plaintiff's favor.  The
> defendant . . . even admits that he
> intentionally used the plaintiff's mark as a
> basis for his own mark, although he then
> argues that intent cannot be proven. . . .
> [T]he defendant admits that, at the very
> least, he intentionally used the plaintiff's

---

[2] The claims rejected by the PF&R were (1) Mollohan had diluted
Brothers of the Wheel's "famous" mark; (2) Mollohan registered
or used a domain name that imitated Brothers of the Wheel's
mark; (3) Mollohan violated some unspecified West Virginia
trademark law; and (4) a request for an unspecified common law
injunction.  See Compl. at 9–11, 2:11-cv-00104; PF&R at 32–33.

3

> mark as an inspiration, even though doing so
> was in violation of his license to use the
> plaintiff's mark as a retired member.  His
> argument that any intent on his part cannot be
> proven is without merit; <u>his behavior
> constitutes a knowing and bad faith violation</u>
> of the license he had as a retired member to
> use the plaintiff's marks.

PF&R at 43 (emphasis added).  In sum, Judge Stanley determined that Mollohan's use of the infringing marks was done knowingly and in bad faith.

As for remedies, Judge Stanley recommended that the court grant an injunction prohibiting Mollohan's use of the infringing marks[3] and that Brothers of the Wheel be awarded treble damages and attorneys' fees.  The first necessary element for the issuance of an injunction is that the movant is suffering or will suffer an irreparable injury.  <u>See</u> PF&R 50 (quoting <u>PBM Prods., LLC v. Mead Johnson & Co.</u>, 639 F.3d 111, 126 (4th Cir. 2011) (citing <u>eBay v. MercExchange</u>, 547 U.S. 388, 391 (2006))).  Judge Stanley wrote that an injunction was appropriate, noting in particular: "<u>[T]he plaintiff has satisfied the irreparable injury requirement</u>.  There is evidence of actual confusion[;] . . . it has suffered monetary losses[;] . . . and its mark and association have become associated with

---

[3] The Lanham Act "gives the power to grant injunctions[] according to the principles of equity."  PF&R 50 (quoting 15 U.S.C. § 116(a)).

the ne'er-do-well community of motorcycle nomads." PF&R at 52–53 (emphasis added).

"[T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee[.]" 15 U.S.C. § 1117(b); see PF&R at 55. One of the factors the Fourth Circuit uses to determine the damages award is "whether the defendant had the intent to confuse or deceive." PF&R 55 (quoting <u>Synergistic Int'l, LLC v. Korman</u>, 470 F.3d 162, 175 (4th Cir. 2006)). Judge Stanley recommended that both treble damages and attorneys' fees be awarded. On the matter of damages, Judge Stanley wrote that "[f]actors warranting monetary damages are present in this case. Most importantly, <u>there has been willful infringement by the defendant</u>."[4] PF&R 56 (emphasis added). As to attorney's fees, Judge Stanley wrote:

> The defendant is a past member of the plaintiff, and the defendant had previously been using the plaintiff's marks under a license. He admits that he used the plaintiff's marks in creating his own club, in

---

[4] It should be noted that "'although willfulness is a proper and important factor in an assessment of whether to make a damages award, it is not an essential predicate thereto. In other words, a lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award.'" PF&R 55 (quoting <u>Synergistic Int'l</u>, 470 F.3d at 175). While willfulness is an important factor, it is not necessarily determinative.

> derogation of his license and in bad faith.
> He has clearly created exceptional
> circumstances warranting an award of
> attorney's fees.

PF&R 56–57.

The court adopted the PF&R in full, including treble damages and attorneys' fees, except that the court deferred the ruling on damages until a proper accounting of the damages and attorneys' fees could be made. See Mem. Op. & Order 2, 23–24, Nov. 14, 2012, 2:11-cv-00104. After subsequent proceedings, the court found that Brothers of the Wheel could not prove its damages with sufficient certainty and awarded nominal damages of one dollar, which was trebled to three dollars. See id. at 6. The court awarded $17,490 in attorney's fees. See Final J. Order, Feb. 19, 2014, 2:11-cv-00104. Mollohan was thus liable to Brothers of the Wheel for $17,493.

Both parties appealed and the Fourth Circuit affirmed in an unpublished per curiam opinion entered on July 2, 2015. See Bros. of the Wheel M.C. Exec. Council, Inc. v. Mollohan, No. 14-1813, at *3 (4th Cir. July 2, 2015). The half-page opinion "conclude[d] that each assignment of error [was] without merit." Id. Despite this, the 2011 Trademark Litigation continued to see filings until appellant filed for bankruptcy in 2021.

After the district court entered judgment in the 2011 Trademark Litigation, Mollohan instigated two suits against

6

Brothers of the Wheel and its members and associates, both in the Southern District of West Virginia: (1) Mollohan v. Warner I, 2:13-cv-32251 (2013), a lengthy and particularly litigious action; and (2) Mollohan v. Warner II, 2:15-cv-12157 (2015), a much briefer litigation. Both cases have since concluded, and both involved some of the same underlying issues as the 2011 Trademark Litigation, such as the validity of certain trademarks owned by Brothers of the Wheel.

The parties are also embroiled in three proceedings before the U.S. Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB"), which similarly concern the validity of appellee's registered trademarks.[5]

The 2011 Trademark Litigation saw no filings from late 2017 until April 1, 2021, when Brothers of the Wheel applied for a writ of execution on the final judgment order for the total amount of $17,493. See Application for Writ of Execution, 2:11-cv-00104, ECF No. 222. The writ was issued by the Clerk on April 6, then stayed by Magistrate Judge Tinsley from April 27 to June 2. See Order, April 27, 2021, 2:11-cv-00104, ECF No. 27; Order, June 2, 2021, 2:11-cv-00104, ECF No. 260. On June 3,

---

[5] These TTAB proceedings are: (1) TTAB Trademark Cancellation Proceeding No. 92059164; (2) TTAB Trademark Cancellation Proceeding No. 92078330; and (3) TTAB Trademark Opposition Proceeding No. 91277305.

2021, the day after the stay was lifted, appellant voluntarily filed for Chapter 13 bankruptcy.  See Notice of Bankr. Case Filing, 2:11-cv-00104, ECF No. 261.

Once the bankruptcy proceedings were underway, Brothers of the Wheel properly filed a proof of claim against Mollohan for the $17,493 "Judgment for damages and attorney fees for trademark infringement."  See Proof of Claim 6-1, Bros. of the Wheel MC Exec. Council, Inc. v. Mollohan (In re Mollohan), Adversary Proceeding No. 2:21-ap-02007 (No. 21-bk-20130).  In its second amended complaint, Brothers of the Wheel argued that the $17,493 was nondischargeable pursuant to 11 U.S.C. section 523(a)(6), which says that a debt is nondischargeable in bankruptcy if it was incurred by "willful and malicious injury." 11 U.S.C. § 523(a)(6); see Mem. Op. & Order 9, Apr. 4, 2023, 2:21-ap-02007 (hereinafter, "Bankr. Order").

During the adversary proceeding Brothers of the Wheel filed a motion for summary judgment, arguing that either the doctrine of res judicata (claim preclusion) or collateral estoppel (issue preclusion) entitled it to summary judgment as a matter of law.  See Bankr. Order 9.  Brothers of the Wheel contended that the court had already determined that Mollohan caused it injury that was willful and malicious during the 2011 Trademark Litigation, and that the issue thus did not need to be

relitigated.  See Bankr. Order 9-10.  Brothers of the Wheel
further argued that summary judgment was appropriate because
there was no genuine dispute of material fact.  See Bankr. Order
9-10.

The bankruptcy court agreed and granted Brothers of
the Wheel's motion for summary judgment on April 4, 2023.
Bankr. Order.  The bankruptcy court held that res judicata did
not apply as the doctrine is inapplicable to nondischargeability
issues in bankruptcy, but that collateral estoppel applied.  See
Bankr. Order 15-21 (citing Brown v. Felsen, 442 U.S. 127 (1979).
The bankruptcy court held that the 2011 Trademark Litigation had
already determined that the $17,493 debt was the result of a
willful and malicious injury caused by appellant and the facts
did not have to be relitigated.  See Bankr. Order 18-20.  Thus,
the bankruptcy court granted summary judgment in favor of
Brothers of the Wheel, holding that the $17,493 debt owed to it
by Mollohan was nondischargeable under 11 U.S.C. section
523(a)(6).  Bankr. Order 21.

Mollohan appealed on April 27, 2023.  ECF No. 1.


## II. STANDARD OF REVIEW

The court has jurisdiction to hear this appeal
pursuant to 28 U.S.C. section 158, which allows district courts

to hear appeals from final orders and judgments in bankruptcy cases.  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's conclusions of law <u>de</u> <u>novo</u>.  <u>See</u> <u>Riley v. Robey</u>, 25 F. App'x 149, 152 (4th Cir. 2002) (citing <u>Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)</u>, 258 F.3d 315, 319 (4th Cir. 2001)); <u>Deutchman v. Internal Revenue (In re Deutchman)</u>, 192 F.3d 457, 459 (4th Cir. 1999).


### III. ANALYSIS

#### A.   Issues on Appeal

         Mollohan attacks the bankruptcy court's decision on numerous grounds.  The court construes his <u>pro</u> <u>se</u> filings liberally, as it must.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal citations omitted)).  Despite this liberal construction, many of Mollohan's arguments are irrelevant, difficult to understand, or assert harmless errors.  Mollohan constantly attempts to relitigate or collaterally attack the long-settled 2011 Trademark Litigation.[6]  Throughout his filings,

---

[6] For instance, in Mollohan's first assignment of error he writes: "This matter before the court is and always has been a

Mollohan is generally combative, disparaging, and disrespectful to Brothers of the Wheel and, at times, the court.

Some of the errors raised by Mollohan are harmless and can be easily set aside. Mollohan points out that the bankruptcy opinion refers to litigation on February 15, 2022, and that there was no litigation on that date. See Appellant's Opening Br. 3, 15, ECF No. 12. Mollohan is correct; the litigation being referred to in the order is that of February 15, 2011 — the date when appellee filed its complaint in the 2011 Trademark Litigation — not 2022. This is a harmless error. Mollohan also contends the order is incorrect when it says the 2011 Trademark Litigation adopted the PF&R, as the court order adopting the PF&R says at the outset that it accepts the PF&R except as to the treble damages. See id. at 3, 15. In fact the district court adopted the entire PF&R, including the recommendation that treble damages be granted, but it excepted damages from the order because the amount of damages had yet to be shown. See Mem. Op. & Order at 2, 23–24, Nov. 14, 2012, 2:11-cv-00104.

Mollohan lists what he calls assignments of error, which are broad claims that contain no legal argument. For

_____

Trademark issue . . . ." Appellant's Opening Br. 12, ECF No. 12.

11

example, he says multiple times that the bankruptcy court committed numerous errors but does not detail what those errors are.  See Appellant's Opening Br. 3–4.  He asserts that the "[e]ntire page 21 of [the order] is in error," id. at 4, but never states what those errors are;[7] he says that "numerous factual findings appear to be made in error," id., but does not explain what those erroneous factual findings are;[8] he says that "[m]issing is any reference the Judge Johnston's [who presided over the 2011 Trademark Litigation] Doc. No. 59, Exhibit 'C' and Doc. No. 60, Exhibit 'B,'" id., but does not describe the documents, their relevance, or the impact of the omission;[9] and, he says that the "Bankruptcy Court committed numerous errors in

---

[7] Page 21 of the bankruptcy order holds that the final elements of collateral estoppel are present (i.e., that the issues were critical and necessary to the prior proceeding, that appellant had a full and fair opportunity to litigate the issues, and that the district court judgment was final and valid) and states the court's conclusion that Brothers of the Wheel is entitled to summary judgment and the debt is nondischargeable.  See Bankr. Order.

[8] The bankruptcy court did not make any factual findings since, having determined that there was no question of material fact, it granted summary judgment.

[9] The documents Mollohan refers to seem to be the court's memorandum opinion and order and judgment order, both of November 14, 2012, wherein the court adopted the PF&R.  These are precisely the documents the bankruptcy order refers to on page 7: "On November 14, 2012, Judge Johnston entered the 11/14/12 Judgment and 11/14/12 Order formally adopting Judge Stanley's PF&R, ordering that [appellee's] Motion for Summary Judgment is granted, and issuing a permanent injunction . . . ."  Bankr. Order 7.

[its order]," "committed a 'Gross Error,'" and that "[t]here are just too many errors," id. at 4, 22, 25.  Mollohan also appears to argue that the bankruptcy order is insufficiently related to appellee's pleadings, but he gives no specific details about this claim.[10]  See id. 24.

Mollohan also makes numerous arguments challenging the legitimacy of Brothers of the Wheel's trademark, all of which are irrelevant to this proceeding and inappropriate to the extent they attempt to collaterally attack the outcome of the 2011 Trademark Litigation and infringe on the purview of the TTAB proceedings.

Additionally, Mollohan argues that Brothers of the Wheel has committed fraud on the court (an argument with which Brothers of the Wheel responds in kind), saying that Brothers of the Wheel represented itself fraudulently to the bankruptcy court, id. at 21, lied in the documents it filed, id. at 23, 27–28, and lied to the court during proceedings, id. at 25.

Finally, Mollohan brings some actual legal challenges to the bankruptcy order.  His brief, "liberally construed,"

---

[10] Mollohan says that the bankruptcy order is "legally defective, contains numerous errors, is defective and flawed on many [counts?] including the fact that it is not plausible [sic] similar to Appellee's Adversary [Complaint] and two (2) Amended Adversary [Complaints].  It will not survive scrutiny." Appellant's Opening Br. 24.

raises the following arguments: (1) summary judgment was inappropriate and improperly applied; (2) collateral estoppel was inappropriate because the issue before the bankruptcy court was not identical to the issue decided in the 2011 Trademark Litigation, and new facts and evidence have come to light since that decision; and (3) the $17,493 debt is dischargeable because it is not covered by any exception to discharge. The court will address these arguments in turn.

B.    <u>Summary Judgment</u>

        The Federal Rules of Bankruptcy Procedure adopt the familiar Federal Rule of Civil Procedure 56 to govern summary judgment in bankruptcy adversary proceedings. <u>See</u> Fed. R. Bankr. P. 7056 ("Rule 56 F.R. Civ. P. applies in adversary proceedings . . . .").[11]  Rule 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is determined by the applicable substantive law: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that

_____

[11] Rule 56 is adopted fully except as to the timeframe for evidentiary hearings, which is not relevant to this appeal.

are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At summary judgment, the court views the evidence in the light most favorable to the nonmovant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Although the burden is initially on the movant to show that there is no genuine dispute of material fact, "[w]hen a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48 (emphasis in original). "[A] party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

15

Summary judgment must "be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." <u>Anderson</u>, 477 U.S. at 250 n. 5. Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)). Instead, a party challenging summary judgment on these grounds must "file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery. . . . [Courts] 'place great weight on the Rule 56(f) affidavit' . . . ." <u>Id.</u> (quoting <u>Evans</u>, 80 F.3d at 961).

Mollohan raises three issues regarding the bankruptcy court's grant of summary judgment: (1) there remained genuine issues of material fact;[12] (2) summary judgment was granted prematurely; and (3) the court applied the wrong standard. <u>See</u> Appellant's Opening Br. 13, 15, 20. As to the first two

---

[12] Appellant exclaims "[t]o grant summary judgment, a court must find that 'a trial would be useless because there are no facts for the judge or jury to weigh.' Did the lawyer for the other side meet the standard above? It is unlikely!" Appellant's Opening Br. 20.

arguments, Mollohan fails to meet his burden of identifying any material fact that is genuinely at issue. If there remained a genuine dispute of material fact and Mollohan believed additional discovery was necessary prior to summary judgment, the proper course of action would have been to file a Rule 56(f) affidavit or declaration. See Harrods Ltd., 302 F.3d at 244. Mollohan filed no such affidavit, nor does he describe the facts that additional discovery would be required to establish. Instead, Mollohan returns again to the merits of the TTAB proceedings, arguing that the case should be remanded to the TTAB for a determination as to the ownership of the underlying trademark. The TTAB proceedings are wholly irrelevant to the present action. Mollohan fails to grasp, or perhaps deliberately ignores, that the 2011 Trademark Litigation outcome was a final and valid judgment which will not change, regardless of the outcome of the proceedings before the TTAB. Thus, the TTAB proceedings have no bearing on whether appellant's debt is dischargeable. Since Mollohan has failed to present any facts germane to this action that are in dispute and has likewise failed to show that summary judgment was premature, the court concurs that summary judgment was appropriate.

Mollohan's third argument, that the bankruptcy court applied the wrong standard at summary judgment, fairs no

better.[13]  The bankruptcy court applied the correct standard.  It did not make factual assumptions, but rather stated the facts from the 2011 Trademark Litigation and applied those facts to the elements of collateral estoppel.  The only material facts in this case concern the elements of nondischargeability, that is, whether the debt arose because appellant caused an injury to Brothers of the Wheel and whether that injury is a result of Mollohan's bad faith.  Because these facts were stated in a valid final judgment by the district court in the 2011 Trademark Litigation, there is no genuine dispute as to those facts now; nor does Mollohan point to any new facts or circumstances that have any bearing on this action.  There was no error in the legal standard for summary judgment applied by the bankruptcy court.

C.    Collateral Estoppel

The doctrine of res judicata encompasses both collateral estoppel (otherwise known as issue preclusion) and claim preclusion (sometimes itself referred to as res

---

[13] Mollohan confusingly says that "[i]n an appeal, the judge must review all the facts in the light most favorable to Appellant." Appellant's Opening Br. 20.  Because this appears near to where he says summary judgment is inappropriate, the court construes this as arguing that the wrong standard was applied at summary judgment.

judicata).[14]  See First Union Com. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996) (citing Nevada v. United States, 463 U.S. 110, 130 n. 11 (1983)).  "Under the traditional rubric of res judicata, once a matter — whether a claim, an issue, or a fact — has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter."  In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 325 (4th Cir. 2004).  The purpose of the doctrine is to preserve judicial efficiency and the finality of judgments.  See id.; see also B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 140 (2015); Montana v. United States, 440 U.S. 147, 153 (1979).

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana, 440 U.S. at 153 (citing Parklane Hosiery

---

[14] The court follows the precedent of Fourth Circuit opinions that have used the term "res judicata" to refer to the broader doctrine under which claim preclusion and collateral estoppel sit.  See In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 325 (4th Cir. 2004); Orca Yachts, LLC v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002); Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998); First Union Com. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996).

Co. v. Shore, 439 U.S. 322, 326 n. 5 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion)).  The Supreme Court has held that it is appropriate for a bankruptcy court to use the doctrine of collateral estoppel to determine the nondischargeability of a debt.  See Grogan v. Garner, 498 U.S. 279, 291 (1991) ("[A] bankruptcy court [can] properly give collateral estoppel effect to those elements of the claim that are identical to the elements required to discharge and which were actually litigated and determined in the prior action."); see also Brannon v. Reynolds (In re Reynolds), 543 B.R. 236, 242 (Bankr. S.D.W. Va. 2015).

The preclusive effect of a judgment is determined by the law of that tribunal; that is, a court applies the collateral estoppel principles of the court that made the initial, precedential decision.  See Taylor v. Sturgell, 553 U.S. 880, 891 (2008).  Where that initial decision was made by a federal district court, the preclusive effect of its judgment is determined by federal common law.  See id.  At federal common law, there are five elements that must exist for collateral estoppel to apply:

> (1) the issue or fact is identical to the one previously litigated;

> (2) the issue or fact was actually resolved in the prior proceeding;
>
> (3) the issue or fact was critical and necessary to the judgment in the prior proceeding;
>
> (4) the judgment in the prior proceeding is final and valid; and
>
> (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

<u>In re Microsoft</u>, 355 F.3d at 326.

Mollohan raises two arguments as to why the application of collateral estoppel was inappropriate in this action: first, he asserts, the issues before the district court in the 2011 Trademark Litigation and the bankruptcy court in the present action were not identical; and second, he contends that new facts and evidence have come to light since the 2011 Trademark Litigation. <u>See</u> Appellant's Opening Br. 13–14. In its analysis, the bankruptcy court determined that collateral estoppel was appropriate because all elements were met.

1.   The issues are identical

The primary question is whether "the issue or fact is identical to the one previously litigated." <u>In re Microsoft</u>, 355 F.3d at 326. Thus, in the present action, the findings of the 2011 Trademark Litigation must be identical to the statutory elements of nondischargeability.

21

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life . . . .'" Grogan, 498 U.S. at 286 (quoting Loc. Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). Thus, "[a] presumption exists that all debts owed by the debtor are dischargeable." In re Reynolds, 543 B.R. at 241; see 11 U.S.C. § 727(b). But the "fresh start" policy "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor,'" Grogan, 498 U.S. at 286–87, and the Bankruptcy Code "provides certain situations where public policy demands that a debt be non-dischargeable." Beckett v. Bundick (In re Bundick), 303 B.R. 90, 104 (Bankr. E.D. Va. 2003).

One such instance in which a debt is nondischargeable is when the debt was incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). Thus, if the debt is the result of a (1) willful and (2) malicious act that (3) cased injury, it is nondischargeable at bankruptcy. See id.; see also Ocean Equity Grp., Inc. v. Wooten (In re Wooten), 423 B.R. 108, 128 (Bankr. E.D. Va. 2010). For collateral estoppel to apply in the present action, the 2011 Trademark Litigation must have found that Mollohan's infringement of the trademark was

malicious, willful, and injured Brothers of the Wheel, per the definitions of those terms used in bankruptcy.

The first question is whether the PF&R's conclusion that Mollohan committed a "willful infringement" is legally identical to section 523(a)(6)'s requirement that the debtor have acted with the intent to bring about the injury. For an injury to be "willful" under section 523(a)(6) it must have been caused by more than mere recklessness or negligence, but by an "act[] done with the <u>actual intent</u> to case injury." <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998) (emphasis added). The Supreme Court has explained that "willful" in this context evokes the law of intentional torts, which "generally require that the actor intend 'the <u>consequences</u> of an act,' not simply 'the act itself.'" <u>Id.</u> at 61–62. (quoting Restatement (Second) of Torts § 8A, cmt. a (1965)) (emphasis in original). The Restatement (Second) of Torts, which the Supreme Court cites in <u>Kawaauhau</u>, says that "intent" denotes that an actor "believes that the consequences [of his act] are substantially certain to result from [his act]." Restatement (Second) of Torts § 8A. "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and he still goes ahead, he is treated by the law as if he had in fact desired to produce the result." <u>Id.</u> cmt. b.

In the PF&R, Judge Stanley specifically found that "there has been willful infringement by the defendant" warranting both trebled damages and attorney's fees.  PF&R at 56.  One of the factors used by the Fourth Circuit in considering whether to award treble damages under the Lanham Act is "whether the defendant had the intent to confuse or deceive," which "addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith."  PF&R 55 (quoting Synergistic Int'l, 470 F.3d at 175).  The Lanham Act also allows for an award of attorneys' fees in "exceptional cases," such as where "defendant's conduct was malicious, fraudulent, willful or deliberate in nature.  In other words, a prevailing plaintiff must show that the defendant acted in bad faith."  PF&R 55–56 (quoting People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001)).

The court notes that, since Judge Stanley's PF&R in 2011, the standard with respect to awarding attorney's fees under the Lanham Act has changed slightly.  The Lanham Act allows for awards of attorney's fees only in "exceptional" circumstances.  Interpreting identical language in the Patent Act in 2014, Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position

24

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). The Fourth Circuit, noting the identical language, held one year later that "there is no reason not to apply the Octane Fitness standard when considering attorney's fees under Section 1117(a)." Georgia-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015), as amended (Apr. 15, 2015). The Fourth Circuit has also interpreted Octane Fitness as "holding that subjective bad faith is not required to establish an exceptional case." Verisign, Inc. v. XYZ.COM LLC, 891 F.3d 481, 488 (4th Cir. 2018).

That being said, the Supreme Court noted that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Octane Fitness, 572 U.S. at 555. And prior to Octane Fitness, the Fourth Circuit had held that the "exceptional" circumstances warranting an award of attorneys' fees refers to instances where the defendant acted in bad faith or there was "a showing of a high degree of culpability on the part of the infringer." Doughney, 263 F.3d at 370 (quoting Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1991); Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc., 951 F.2d 684, 697 (5th Cir.

1992)).  Writing that "there has been willful infringement by the [appellant]," that Mollohan acted "in bad faith," and that he had "the intent to confuse or deceive[,]" Judge Stanley found that treble damages were warranted and that this was an "exceptional case" warranting attorney's fees under the Lanham Act.  PF&R at 55–56.

Judge Stanley's findings as to willfulness and bad faith correspond with the requirements of section 523(a)(6). The determination that Mollohan knowingly infringed upon appellee's mark satisfies the requirement that he was substantially certain that the injury – trademark infringement – would result.  In other words, Mollohan acted with the actual intent to infringe upon Brothers of the Wheel's trademark by using its mark as a basis for his own.

The second question is whether the PF&R's conclusion that Mollohan acted "in bad faith" and committed a "willful infringement" is legally identical to section 523(a)(6)'s use of the word "malicious."  Like "willful," "malicious" under section 523(a)(6) "does not mean the same thing . . . that it often does in other contexts."  First Nat'l Bank of Md. v. Stanley (In re Stanley), 66 F.3d 664, 667 (4th Cir. 1995) (citing St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1008–09 (4th Cir.

1985), <u>overruled on other grounds by Kawaauhau</u>, 523 U.S. 57).[15]
Implied malice will suffice; a creditor need not prove specific
malice for a debt to be nondischargeable. <u>St. Paul Fire</u>, 779
F.2d at 1009. Under section 523(a)(6), implied malice "may be
shown by the acts and conduct of the debtor in the context of
their surrounding circumstances." <u>Id.</u> at 1010. "A debtor may
act with malice even though he bears no subjective ill will
toward, and does not specifically intend to injure, his
creditor." <u>In re Stanley</u>, 66 F.3d at 667 (citing <u>St. Paul Fire</u>,
779 F.2d at 1008–10). Thus, an "act that is done deliberately
and intentionally in knowing disregard of the rights of another
would satisfy this implied malice standard." <u>Hagan v. McNallen
(In re McNallen)</u>, 62 F.3d 619, 626 (4th Cir. 1995) (quoting <u>Lee
v. Lee (In re Lee)</u>, 90 B.R. 202, 207 (Bankr. E.D. Va. 1988),
<u>overruled on other grounds by Kawaauhau</u>, 523 U.S. 57).

As such, for <u>collateral estoppel</u> to apply, the PF&R
must have found that Mollohan knew that the act of infringing
upon Brothers of the Wheel's trademark would injure Brothers of
the Wheel. Judge Stanley found that Mollohan knew of Brothers
of the Wheel's mark — indeed, he was a former member and

---

[15] While <u>St. Paul Fire</u>'s assessment of "willfulness" under
section 523(a)(6) has been foreclosed upon by the Supreme
Court's <u>Kawaauhau</u> decision, the Court has said nothing that
would cast doubt upon <u>St. Paul Fire</u>'s interpretation of "malice"
under that same section.

admitted to basing his mark on that of Brothers of the Wheel. Mollohan acted deliberately and intentionally by using that mark.  Furthermore, Judge Stanley wrote that a person acts in bad faith when their conduct is "malicious, fraudulent, willful or deliberate in nature," then concluded that appellant acted in bad faith, thus subsuming "maliciousness" into her characterization of appellant's actions.  The findings of the PF&R and the requirements of section 523(a)(6) as to the element of maliciousness are legally identical.

Finally, the PF&R must have concluded that appellant injured appellee.  This is the simplest element of section 523(a)(6) to satisfy.  In recommending remedies for Mollohan's Lanham Act violation, the PF&R found that a permanent injunction was appropriate, in part because Brothers of the Wheel suffered an irreparable injury.  Mollohan's assertion that there was no injury because Brother of the Wheel failed to prove damages with sufficient certainty is incorrect, as it confuses injury and damages.  Section 523(a)(6) does not require that the debtor cause damages — which can be particularly difficult to prove in trademark infringement cases dealing with lost profits and loss of good will — but rather that the debtor cause a legal injury. This Mollohan did when he infringed upon the trademark.  The PF&R declared that Mollohan caused an irreparable injury in recommending that the district court grant a permanent

injunction, and as such satisfied the third and final element of section 523(a)(6).  Thus, the three elements at issue under section 523(a)(6) are legally identical to findings already made in the 2011 Trademark Litigation.

>    2.    The issues were actually resolved

The second element of collateral estoppel, that "the issue or fact was actually resolved in the prior proceeding," <u>In re Microsoft</u>, 355 F.3d at 326, is satisfied.  The PF&R not only discussed the issues but concluded that they had occurred. Thus, these issues were actually resolved by the court.

>    3.    The issues were critical and necessary

The third element of collateral estoppel, that "the issue or fact was critical and necessary to the judgment in the prior proceeding," <u>In re Microsoft</u>, 355 F.3d at 326, is also satisfied.  An "irreparable injury" is necessary to grant an injunction; thus, the determination that Brothers of the Wheel was injured was critical and necessary to the judgment.  A defendant's "intent to confuse or deceive" is one of the factors courts consider in determining the damages award under the Lanham Act, <u>see</u> <u>Synergistic Int'l</u>, 470 F.3d at 175, and bad faith is part of the "exceptional circumstances warranting an award of attorney's fees."  PF&R at 57.  Thus, it was critical and necessary for the court to determine that Mollohan acted

willfully and maliciously when it awarded treble damages and
attorneys' fees; remedies themselves are a necessary part of
adjudicating such a case under the Lanham Act.

    4.    The judgment was final and valid

        The fourth element of collateral estoppel, that "the
judgment in the prior proceeding is final and valid," In re
Microsoft, 355 F.3d at 326, is satisfied.  The PF&R was adopted
by the district court, which issued a memorandum opinion and
order and a final judgment order.  The district court had
personal jurisdiction over the parties and subject matter
jurisdiction over the action, which was a federal question.  The
order was final and appealable, as evidenced by the fact that
both parties appealed the decision to the Fourth Circuit Court
of Appeals, which affirmed.

    5.    Appellant had a full and fair opportunity to litigate
          the issues

        The fifth and final element of collateral estoppel,
that "the party to be foreclosed by the prior resolution of the
issue or fact had a full and fair opportunity to litigate the
issue or fact in the prior proceeding," In re Microsoft, 355
F.3d at 326, is satisfied.  Mollohan not only had the
opportunity to litigate the issues, but did so vigorously, as is
apparent from the voluminous record of the 2011 Trademark
Litigation.

30

6.  **No exception to the application of collateral estoppel applies**

Even if the five elements of collateral estoppel are met, Mollohan contends that the doctrine should not apply because circumstances have changed since the 2011 Trademark Litigation.  <u>See</u> Appellant's Opening Br. 14.  He asserts that "there are new Facts and new Evidence made available" and that collateral estoppel is thus inappropriate.  <u>See</u> <u>id.</u> at 13.  However, Mollohan does not say what the new evidence is or describe what sort of impact it has on the proceedings, nor does he cite to any legal authority for his statement that such new evidence precludes collateral estoppel.

Mollohan instead returns to the issue of whether there was trademark infringement, which is not the issue in this appeal.  He "request[s] that this court send the Trademark matter back to the TTAB for determination, which the courts have previously done," and cites to authority discussing the use of TTAB precedent in determining whether there had been trademark infringement.  <u>See</u> Appellant's Opening Br. 37 (citing <u>B&B Hardware Inc.</u>, 575 U.S. 138; <u>Tigercat Int'l, Inc. v. Caterpillar, Inc.</u>, No. 16-cv-1047-GMS, 2018 WL 2049816 (D. Del. May 2, 2018)).  This argument, and those cases, are not relevant to this appeal.  Mollohan attempts to argue that the case should be sent to the TTAB to determine whether there has been

trademark infringement.  The fact that appellant infringed upon appellee's mark was determined in a final and valid judgment by the court in the 2011 Trademark Litigation.  Again, the issue in this appeal is whether the debt is nondischargeable, not whether Mollohan infringed upon appellee's mark.

Thus, Mollohan's argument is really that collateral estoppel should not apply because he wants the question of whether he infringed Brothers of the Wheel's trademark to be relitigated and he thinks the TTAB will decide differently than the court did in the 2011 Trademark Litigation.  This is not a valid reason not to apply collateral estoppel.  As Mollohan has failed to point to any new facts or evidence that may impact the court's determination in this matter, the court finds the application of collateral estoppel to be appropriate.

D.    <u>Nondischargeability of Attorneys' Fees</u>

Mollohan's final argument is that the $17,493 debt is not subject to section 523(a)(6)'s nondischargeability provision.  Although his primary argument that section 523(a)(6) is inapplicable is that appellee did not suffer an injury,[16] the court will construe his challenge to the applicability of

---

[16] Mollohan argues that Brothers of the Wheel did not suffer an injury because the court found that it could not prove its damages with certainty, again conflating injury and damages.

section 523(a)(6) broadly.  Mollohan caused appellee a willful and malicious injury when he infringed upon its trademark. However, only three dollars of the total debt constitutes damages arising from this injury.  Those damages are nondischargeable.  The question, then, is whether the remaining $17,490, constituting the award of attorneys' fees, is also nondischargeable.  This matter was not discussed by the bankruptcy court.

There are two different standards that courts use to determine whether an attorney fee award is nondischargeable.[17] The first is the "Statutory/Contractual Basis" doctrine, under which "fees may be determined non-dischargeable only where there originally existed some statutory or contractual basis for the award."  Merriex v. Beale (In re Beale), 253 B.R. 644, 651 (Bankr. D. Md. 2000); see also TranSouth Fin. Corp. of Fla. v. Johnson, 931 F.2d 1505, 1509 (11th Cir. 1991) ("Our reading of the Bankruptcy Code's plain language is reinforced by the principle that attorney's fees are properly awarded to a creditor prevailing in a bankruptcy claim if there exists a statute or valid contract providing therefor.") (citing

---

[17] There is also a third doctrine that applies only in cases of divorce and separation.  See Merriex v. Beale (In re Beale), 253 B.R. 644, 651 (Bankr. D. Md. 2000) (citing Freer v. Weinstein (In re Weinstein), 173 B.R. 258, 273 (Bankr. E.D.N.Y. 1994)).

Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717 (1967); Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1168 (6th Cir. 1985); Nat Harrison Assocs., Inc. v. Gulf States Utilities Co., 491 F.2d 578, 588–89 (5th Cir. 1974)).

The second of these is the "Status Dependent" doctrine, under which "the dischargeability of ancillary obligations such as attorneys' fees turn[s] on the dischargeability of the underlying debt." In re Beale, 253 B.R. at 651 (quoting DuPhily v. DuPhily (In re DuPhily), 52 B.R. 971, 978 (D. Del. 1985)) (alteration in original) (citations omitted); see also Sposa v. Sposa (In re Sposa), 31 B.R. 307, 310 (Bankr. E.D. Va. 1983) ("Ancillary obligations, such as attorney's fees, stand or fall (i.e. dischargeable or nondischargeable) with the primary debt.") (citing Bell v. Bell (In re Bell), 5 B.R. 653 (Bankr. W.D. Okla. 1980)).  The "Statutory/Contractual Basis" doctrine has been precedentially adopted by the Second, Sixth, Ninth, and Eleventh Circuits.  Id. The "Status Dependent" doctrine has been used by various courts across the country.  Id.

Although the Fourth Circuit does not unilaterally follow one doctrine, the court need not decide which to adopt at present, since the attorney fees at issue in this appeal are

nondischargeable under both tests.  The "Statutory Contractual Basis" doctrine is satisfied, as the attorneys' fees were awarded per statutory authority of the Lanham Act.  The "Status Dependent" doctrine is satisfied because the attorneys' fees are attached to an underlying debt (the three-dollar damage award) that is nondischargeable per section 523(a)(6).  Thus, the entirety of the debt owed by appellant – both the $17,490 attorney fee award and the $3 trebled nominal damages – is nondischargeable.

## IV. CONCLUSION

Accordingly, the court concludes that the entire $17,493.00 debt owed by Mollohan to Brothers of the Wheel is nondischargeable at bankruptcy.  It is therefore ordered that the ruling of the bankruptcy court be, and it hereby is, AFFIRMED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: December 30, 2025

John T. Copenhaver, Jr.
Senior United States District Judge